IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JANETTE B.,<br><br>　　　　　Claimant,<br><br>　　v.<br><br>KILOLO KIJAKAZI,<br>Acting Commissioner of Social Security,<br><br>　　　　　Respondent. | No. 20 C 5673<br><br>Magistrate Judge Jeffrey T. Gilbert |

**MEMORANDUM OPINION AND ORDER**

Janette B.[1] ("Claimant") seeks review of the final decision of Kilolo Kijakazi,[2] Acting Commissioner of the Social Security Administration ("Commissioner"), denying her applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, respectively. Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties consented to the exercise of jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 7]. This Court, therefore, has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c), and this matter is fully briefed and ripe for review. *See* [ECF Nos. 17, 23, 24, 25].

---

[1] Pursuant to Northern District of Illinois Local Rule 8.1 and Internal Operating Procedure 22, the Court will identify the non-government party by using her first name and the first initial of the last name.

[2] Kilolo Kijakazi became Acting Commissioner of the Social Security Administration on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court has substituted Acting Commissioner Kijakazi as the named defendant.

For the reasons discussed in this Memorandum Opinion and Order, Claimant's Memorandum in Support of Reversing or Remanding Commissioner's Decision [ECF No. 17], which this Court construes as a motion, is denied, and the Commissioner's Motion for Summary Judgement [ECF No. 23] is granted.

## PROCEDURAL HISTORY

On October 17, 2017, Claimant filed a Title II application for a period of disability and disability insurance benefits. (R.122). Claimant also filed a Title XVI application for supplemental security income at the same time. (R.122). In both applications, Claimant alleged a disability beginning on November 1, 2015. (R.122). The applications were denied initially on January 12, 2018, and again on reconsideration on April 24, 2018, after which Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (R.122). On March 28, 2019, Claimant appeared and testified at a hearing before ALJ Patricia Kendall. (R.122). At the hearing, Claimant was represented by attorney Jim P. Brown. (R.122). During the hearing, the ALJ also heard testimony from Terry H. Shapiro, PhD., an impartial medical expert, and James J. Radke, a vocational expert. (R.122).

On September 5, 2019, the ALJ issued her decision denying Claimant's applications for disability insurance benefits and supplemental security income. (R.122-136). In finding Claimant not disabled within the meaning of the Social Security Act, the ALJ followed the five-step evaluation process required by the Social Security Regulations for individuals over the age of 18. *See* 20 C.F.R. § 404.1520(a). At step one, the ALJ found Claimant met the insured status requirement of the Social

Security Act through March 31, 2017, and that she had not engaged in substantial gainful activity since November 1, 2015, the alleged onset date of her disability. (R.124). At step two, the ALJ found that Claimant has severe impairments, including anxiety/obsessive-compulsive disorder ("OCD"), affective disorder/depression/ dysthymic, and uterine prolapse. (R.125).

At step three, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (R.125). In particular, the ALJ considered listings 12.04 and 12.06 and concluded that Claimant did not manifest clinical signs or findings that meet or equal the criteria of those listings. (R.125). In so concluding, the ALJ also evaluated whether the "paragraph B" criteria had been satisfied and determined that the criteria had not been met. (R.125-26). The ALJ did note, however, that Claimant had moderate limitations in the following areas of functioning including: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. (R.125-26).

Before proceeding from step three to step four, an ALJ must assess a claimant's residual functional capacity ("RFC"). 20 C.F.R. § 416.920(a)(4). "The RFC is the maximum that a claimant can still do despite [her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008). Here, the ALJ determined that Claimant has the RFC "to perform light work as defined in 20 CFR 404.1567(b) and

3

416.967(b) except she should avoid all exposure to the use of moving machinery and unprotected heights; work is limited to simple, routine and repetitive tasks, in a work environment free of fast paced production requirements, involving only simple, work-related decisions, with few, if any, work place changes; occasional supervision and occasional interaction with co-workers and the public." (R.127).

At step four, the ALJ determined that Claimant could not perform her past relevant work. (R.134). At step five, the ALJ considered Claimant's age, education, work experience, and RFC and concluded there are a significant number of jobs in the national economy that Claimant could perform (R.135). For all these reasons, the ALJ found Claimant was not disabled under the Social Security Act. (R.135-36). The Appeals Council declined to review the matter on July 22, 2020 (R.1-6), making the ALJ's decision the final decision of the Commissioner. Therefore, this Court now has jurisdiction to review this matter. *See* 42 U.S.C. § 405(g); *see also Smith v. Berryhill*, 139 S. Ct. 1765, 1775 (2019); *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## STANDARD OF REVIEW

When a claimant files an application for disability benefits, she bears the burden under the Social Security Act to bring forth evidence that proves her impairments are so severe that they prevent the performance of any substantial gainful activity. 42 U.S.C. § 423(d)(5)(A); *see Bowen v. Yuckert*, 482 U.S. 137, 147-48 (1987) (citing 42 U.S.C. § 423(d)(1)(A)). A five-step inquiry controls whether an individual is eligible for disability benefits under the Social Security Act, which the Seventh Circuit has summarized as follows:

> The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves [her] unable to perform [her] past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy."

*Butler v. Kijakazi,* 4 F.4th 498, 501 (7th Cir. 2021) (citing *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005); 20 C.F.R. §§ 404.1520, 416.920). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. *Gedatus v. Saul,* 994 F.3d 893, 898 (7th Cir. 2021); *Wilder v. Kijakazi,* 22 F.4th 644 (7th Cir. 2022).

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). Judicial review is limited to determining whether an ALJ's decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standard in reaching her decision. *See Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal quotations omitted); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Biestek,* 139 S.Ct. at 1154; *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir.

5

2002). Even when there is adequate evidence in the record to support the decision, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008) (internal quotations omitted). In other words, if the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *See Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008) (internal quotations omitted). The reviewing court may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

## ANALYSIS

Claimant raises three arguments challenging the ALJ's decision: (1) the ALJ failed to support her assessment of the medical opinions with substantial evidence; (2) the ALJ improperly rejected Claimant's subjective statements; and (3) the ALJ constructed an RFC assessment that does not sufficiently accommodate Claimant's documented non-exertional limitations. *See* Claimant's Brief [ECF No. 17]. The Court will address each argument in turn.

At the outset of the Court's review, it is important to note that the Court's role in this case is not to determine from scratch whether or not Claimant is disabled and entitled to disability insurance benefits or supplemental security income. Instead, as

6

set forth above, the law mandates that this Court's review of the ALJ's findings is deferential, and the Court only must determine whether the ALJ applied the correct legal standard and confirm that the ALJ's decision is supported by substantial evidence. *See Shideler v. Astrue,* 688 F.3d 306, 310 (7th Cir. 2012); *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010); *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). This Court cannot consider the facts anew or draw its own conclusion. Rather, if substantial evidence supports the ALJ's factual findings, those findings are conclusive, and the Commissioner's decision must be affirmed. 42 U.S.C. § 405(g). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Nelms*, 553 F.3d at 1097 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In making that determination, the Court must review the record as a whole, and it cannot re-weigh the evidence or substitute its judgment for that of the ALJ. *Id.*

## I. The ALJ's Evaluation of the Medical Opinion Evidence Is Supported by Substantial Evidence

The ALJ's evaluation of the medical opinion evidence in this case is subject to new regulations pertaining to claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c (2017). Under the new regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). An ALJ need only articulate "how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record." 20 C.F.R. § 404.1520c(b). The new regulations direct

7

the ALJ to consider the persuasiveness of medical opinions using several listed factors, including supportability, consistency, relationship with the claimant, specialization, and other factors that tend to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(a) and (c). The regulations identify supportability and consistency as the most important factors when evaluating persuasiveness. 20 C.F.R. § 404.1520c(a). An ALJ must explain how she considered those factors in her decision, but she is not required to explain how she considered the other factors. 20 C.F.R. § 404.1520c(b)(2).

Claimant challenges the ALJ's analysis of three medical opinions of record: (1) Dr. Bunday, Claimant's therapist; (2) Dr. Cheon, Claimant's psychiatrist; and (3) Terry Shapiro, Ph.D., the independent medical expert who testified at the hearing. In the Court's view, the ALJ appropriately considered the medical opinions in this case in accordance with the new regulations. The ALJ reviewed and addressed the opinions of Dr. Bunday and Dr. Cheon, who are Claimant's treating psychologist and psychiatrist, and found that their opinions are "somewhat persuasive," reasonably supported, and generally consistent with the medical evidence. (R.133). The ALJ explained that their opinions are less persuasive than they otherwise would have been because of the treaters' limited treatment relationships with Claimant and their substantial reliance on her subjective reports. (R.133). As to Dr. Shapiro, the ALJ explained that she was not persuaded by his opinion because he relied almost entirely on Claimant's self-reported symptoms, many of which contradicted the medical evidence or other record evidence. (R.133).

8

When evaluating the opinions of Dr. Bunday and Dr. Cheon, the ALJ first noted the length of Claimant's treatment history with them. Specifically, the ALJ noted that Dr. Cheon saw Claimant only four times between July 2018 and February 2019 and diagnosed Claimant with generalized anxiety disorder, dysthymic disorder and other obsessive-compulsive disorder but found no cognitive deficit. (R.131-32). As to Dr. Bunday, the ALJ noted that Claimant had cognitive therapy with Dr. Bunday four times from December 2018 through February 2019. (R.131-32). Claimant, however, points out that she saw Dr. Bunday every two weeks during a four month period. Claimant's Brief [ECF No. 17], at 10 (citing R. 1549-53). Still, the length of treatment was only four months.

In light of the limited and short treatment relationship, the ALJ concluded that "[t]he opinions of Drs. Cheon and Bunday are less persuasive than they otherwise would have been because of the limited longitudinal relationship and their reliance on the claimant's subjective reports." (R.132). The Court cannot say the ALJ's concern is unreasonable. The ALJ was skeptical of Dr. Cheon's very specific and detailed opinion in April 2019 regarding Claimant's work-related functional difficulties which were based largely on Claimant's self-reporting. (R.132-33). The ALJ also explained that Dr. Cheon's notation that Claimant's work-related functional difficulties began at age 17 also suggested that he relied heavily on Claimant's subjective reports to him in providing his opinion. (R.133).

Claimant argues that she "should not be penalized simply because it took her a while to seek the mental health treatment she desperately needed." Claimant's

9

Brief [ECF No. 17], at 10. However, the length of the treatment relationship between a claimant and her medical providers is a relevant regulatory factor. In the Court's view, the ALJ did not "penalize" Claimant for her short treatment relationship, but rather reasonably considered it in the context of her evaluation of the persuasiveness of Dr. Cheon's and Dr. Bunday's opinions. The ALJ noted that Claimant did not seek mental health treatment until July 2018, which was after her applications for benefits had been denied (R.128), and the Court notes that is over a year after Claimant's date last insured. (R.124).

Claimant also argues that the ALJ's explanation for finding Dr. Cheon's opinion less persuasive due to a heavy reliance on her subjective reports "reveals a somewhat startling misunderstanding of mental illness, which is not generally susceptible to detection by objective testing." Claimant's Brief [ECF No. 17], at 10. Given the present record, however, the Court disagrees with Claimant. In the Court's view, it is not unreasonable for the ALJ to question Dr. Cheon's seemingly uncritical acceptance of Claimant's claims that her functional difficulties dated back to age 17 and to conclude that his opinion was only "somewhat persuasive" because he appeared to rely too heavily on Claimant's subjective reporting. (R.133). While a doctor's assessment of mental symptoms and functional capabilities may often be based, at least in part, on a claimant's self-reports, "[s]till, even in such cases, the doctor can be too uncritical." *Shannon M. v. Saul*, No. 18 C 7074, 2020 WL 264522, at *12 (N.D. Ill. Jan. 17, 2020). The ALJ sufficiently articulated her rationale for finding Dr. Cheon's and Dr. Bundy's opinions "less persuasive than they otherwise

10

would have been because of the limited longitudinal relationship and their reliance on the claimant's subjective reports" (R.133), and the Court finds that analysis is reasonable and supported by the record.

Claimant also challenges the ALJ's analysis of Dr. Shapiro's opinion that Claimant's functional difficulties were of listing-level severity: marked difficulties in concentration and adapting or managing herself, and moderate to marked difficulties in social interaction. Claimant's Brief [ECF No. 17], at 11-12. The ALJ offered multiple reasons for finding Dr. Shapiro's opinion unpersuasive. Most significantly, the ALJ determined that Dr. Shapiro relied almost entirely on Claimant's self-reported symptoms, many of which contradicted the medical evidence or other record evidence. (R.133). The ALJ also explained that Dr. Shapiro cited autism and PTSD as relevant impairments for Claimant, but noted that there is no medical evidence in the record that Claimant had been diagnosed with autism and PTSD and that it was Claimant herself who suggested them. (R.133, referring to R.48, 839). The ALJ provided sufficient explanation and support for her decision to not fully credit Dr. Shapiro's opinion.

Claimant argues the ALJ's characterization of Dr. Shapiro's testimony about these diagnoses was unfair, arguing that he merely mentioned PTSD and autism "as an aside, noting they were mentioned in the notes." Claimant's Brief [ECF No. 17], at 11. This Court, however, cannot say that the ALJ's characterization and skepticism here is unreasonable. Dr. Shapiro listed these conditions along with OCD and depression after the ALJ asked him to identify the severe mental impairments in the

11

case, and he did not indicate in any way that they were insignificant. (R.133-34). The ALJ also pointed out that while Dr. Shapiro opined that Claimant's functional difficulties met listing-level severity for listing 12.04 relating to her depression, Claimant's doctors regularly assessed her depression as mild and improved with treatment. (R.133). Again, the Court cannot say it is unreasonable for the ALJ to question the persuasiveness of Dr. Shapiro's opinion because his conclusion that Claimant's mild depression was severe enough to meet a listing is not supported by the record. (R.133-34). And the Court will not second guess the ALJ based on this record.

As for Dr. Shapiro's opinion about Claimant's OCD and listing 12.06, the ALJ again was skeptical of Dr. Shapiro's conclusions about Claimant's OCD symptoms because there is little, if any, objective evidence in the record that her symptoms caused significant limitations. (R.134). The ALJ explained that Dr. Shapiro noted OCD symptoms of skin picking and door locking as support for marked functional difficulties in listing 12.06, but when Claimant reported these symptoms to a consultative examiner, she stated her rituals were not extensive or time intensive. (R.134, citing R.839). In addition, the ALJ noted that the consultative examiner found that Claimant tended to exaggerate her self-reports and there was minimal current evidence to support OCD-related behaviors other than counting numbers and uncomfortableness with odd numbers, which also were noted by Dr. Shapiro. (R.134). The ALJ found that Dr. Shapiro did not provide a persuasive explanation for any functional limitation. (R.133-34). When asked what specific work-related difficulties

12

Claimant would have given her OCD behaviors, Dr. Shapiro merely stated that she could be stuck in the bathroom counting numbers. (R.134, citing R.49). Ultimately, the ALJ found that Dr. Shapiro's explanations were insufficient to support his more extreme opinion. (R.133-134).

In the Court's view, the ALJ reasonably found that Claimant's medical records, treatment history, and past work history were more consistent with moderate functional difficulties and that she has the ability to perform simple, routine, repetitive work with limitations against fast-paced work as opined by Dr. Cheon and Dr. Bunday and with added limitations from stress and social interaction. To the extent Claimant is asking the Court to reweigh the evidence, the Court cannot do that. *Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020) (The court "will not reweigh evidence or substitute [its] judgment for [that of] the ALJ's."). In sum, the ALJ evaluated the medical opinions in light of the record as a whole and sufficiently articulated her decision to discount those opinions. This Court will not reweigh the evidence, and the ALJ's evaluation of the medical opinion evidence must stand.

## II. The ALJ Sufficiently Considered Claimant's Subjective Complaints

Next, Claimant argues the ALJ's finding that Claimant's statements are not entirely consistent with the record is not supported by substantial evidence. Claimant's Brief [ECF No. 17], at 13-14. The Social Security Act makes clear that a claimant's subjective complaints "shall not alone be conclusive evidence of disability." 42 U.S.C. § 423(d)(5)(A). Social Security regulations and policy provide factors for an ALJ to consider in determining the extent to which a claimant's statements about the

13

intensity and persistence of her symptoms limit her capacity for work. 20 C.F.R. § 404.1529(c); SSR 16-3p. Those factors include, among others, objective medical evidence, the extent of treatment a claimant receives, and a claimant's prior work record. *Id.* An ALJ is only required to explain the weight given to a claimant's statements in a manner sufficient to provide a fair sense of how the ALJ assessed the claimant's testimony. *See* SSR 16-3p.

The Court affords the ALJ's evaluation of a claimant's symptoms special deference because the ALJ is in the best position to see and hear the witnesses and to assess their forthrightness. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019); *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009). The Court is required to give "the ALJ's credibility finding special deference" and will reverse the symptom evaluation only if the claimant shows it is so lacking in explanation or support that it is "patently wrong." *Summers*, 864 F.3d at 528 (internal quotation marks and citation omitted). A subjective symptom evaluation is "patently wrong" only if it lacks any explanation or support. *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008).

Here, the ALJ found that that the medical evidence did not substantiate Claimant's symptoms of "daydreaming" or "zoning out" that she claimed would have a limiting and preclusive effect on her ability to work. To support this conclusion, the ALJ explained that Claimant saw her psychologist and psychiatrist for a short period of time and only after her claim for disability benefits was denied initially and on reconsideration. (R.128-29). In the Court's view, it is entirely reasonable and proper for the ALJ to consider this as evidence weighing against her subjective allegations

14

of the severity and limiting effects of her symptoms. *See* SSR 16-3p ("[I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints . . . we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record.").

Claimant takes issue with the ALJ considering when she sought treatment for her mental health, but the case she cites offers little support for this proposition. Claimant's Brief [ECF No. 17], at 14 (citing *Voight v. Colvin*, 781 F.3d 871, 878 (7th Cir. 2014)). This Court recognizes that when considering a claimant's subjective symptoms, the Seventh Circuit has cautioned against relying on a delay in seeking treatment without considering possible reasons the claimant so delayed. *See, e.g., Deborah M. v. Saul*, 994 F.3d 785, 790 (7th Cir. 2021) ("Social Security Rule 16-3p … provides that an ALJ must consider possible reasons for a failure to seek treatment."). Claimant, however, has not provided any explanation for the delay or infrequency of her treatment. And at the hearing, when the ALJ asked her to explain her lack of mental health treatment until July 2018, Claimant testified that she sought treatment once she "noticed that [she] kept getting fired." (R.28). But the record shows that Claimant last worked in November 2015, and she alleges she became disabled in November 2015, so her explanation fails to show the ALJ was unreasonable to consider her delay of about two and a half years in seeking treatment as a factor weighing against her subjective claims of disabling OCD symptoms. (R.228, 356).

15

In addition, the ALJ reasonably considered Claimant's employment history in comparison with her subjective symptom allegations and found that they were not entirely consistent. 20 C.F.R. § 404.1529(c)(3) ("We will consider all of the evidence presented, including information about your prior work record . . . ."). The ALJ noted that Claimant testified that her OCD symptoms began when she was 17, but she was employed at K-Mart for three years from 2010 to 2013 despite her symptoms. (R.128, citing R.23). The ALJ also pointed out that Claimant was not fired from her K-Mart job, but left due to her pregnancy and did not return because the company shut down. (R.128, citing R.25). An ALJ is permitted to discredit a claimant's testimony based on the fact that the claimant had worked for years despite having the same condition for which the claimant now alleges disability, or because the claimant leaves a job for reasons unrelated to her alleged disability. *See Wendy C. v. Saul*, 2020 WL 5848420 (N.D. Ill. Oct. 1, 2020); *Richard C. v. Saul*, 2020 WL 1139244, at \*3 (N.D. Ill. Mar. 9, 2020) (citing *Lafayette v. Berryhill*, 743 F.App'x 697, 699-700 (7th Cir. 2018)). Claimant does not offer any response to the ALJ's consideration of these factors.

Finally, Claimant contends that the ALJ ignored evidence supporting her subjective allegations, but she does not identify any specific evidence the ALJ overlooked that would show the ALJ's decision was unreasonable. Claimant's Brief [ECF No. 17], at 13-14. Claimant cannot show reversible error simply by suggesting the evidence could support an alternative conclusion. *See Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020) (citing *L.D.R. v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019))

16

("[E]ven if reasonable minds could differ on the ALJ's rejection of [the claimant's] testimony, we will not reweigh evidence or substitute our judgment for the ALJ's.").

The alleged severity of Claimant's mental symptoms was inconsistent with the medical record and the ALJ's assessment of the evaluations offered by Claimant's treating physicians, and therefore, the ALJ concluded that Claimant had the mental and physical ability to perform light work with additional restrictions incorporated into the RFC. The ALJ is entitled to consider whether the objective medical evidence and/or medical opinions conflicted with Claimant's subjective description of her symptoms because, as the Seventh Circuit has emphasized, "[t]here is no presumption of truthfulness for a claimant's subjective complaints; rather, an ALJ should rely on medical opinions based on objective observations and not solely on a claimant's subjective assertions." *Knox v. Astrue*, 327 F. App'x 652, 655 (7th Cir. 2009) (citing *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004)). In the Court's view, the ALJ permissibly considered Claimant's employment history, the course of her treatment, and the longitudinal record evidence showing Claimant was employed for a three year period of time and seemingly was able to manage her symptoms during that time. For these reasons, the Court finds that the ALJ's assessment of Claimant's subjective symptoms is supported by substantial evidence.

### III. The ALJ's RFC Is Supported by Substantial Evidence

Finally, Claimant argues the ALJ's RFC assessment does not sufficiently accommodate her documented non-exertional limitations The standard of review for this argument is clear and not controversial. An ALJ's analysis of a claimant's RFC

17

"must say enough to enable review of whether the ALJ considered the totality of a claimant's limitations." *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021). An ALJ is not required to provide a complete and written evaluation of every piece of testimony and evidence, but she must build a logical bridge from the evidence to her conclusion. *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015). It is well-settled law that mere boilerplate statements and conclusions cannot support an ALJ's decision and an ALJ must set forth "specific reasons" for discounting subjective reports of symptoms. *See Myles v. Astrue*, 582 F.3d 672, 676 (7th Cir. 2009), citing *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009); *Steele v. Barnhart,* 290 F.3d 936, 941-42 (7th Cir. 2002). An ALJ's sparse explanation frustrates a court's ability to engage in a meaningful review of the ALJ's decision. *Eakin v. Astrue*, 432 Fed. Appx. 607, 611 (7th Cir. 2011).

Among other limitations, the ALJ found Claimant can perform light work "limited to simple, routine and repetitive tasks, in a work environment free of fast paved production requirements, involving only simple, work-related decisions, with few, if any, workplace changes; occasional supervision and occasional interaction with co-workers and the public." (R.127). Claimant raises a familiar issue questioning whether the ALJ's restriction to "simple, routine and repetitive tasks" adequately addresses a moderate limitation in concentration, persistence, and pace. Claimant's Brief [ECF No. 17], at 15. Claimant characterizes Seventh Circuit precedent on this issue as a bright-line rule disfavoring such a result. The Court disagrees and does not discern the same trend from Seventh Circuit decisions in this area. Instead, the

18

factually specific question to be answered in each case is whether the ALJ has adequately explained, with support from the medical record, how a restriction to simple, routine, and repetitive tasks addresses the claimant's specific concentration, persistence, or pace limitations. The Seventh Circuit has explained that "[e]ven generic limitations, such as limiting a claimant to simple, repetitive tasks, may properly account for moderate limitations in concentration, persistence, and pace, so long as they 'adequately account for the claimant's demonstrated psychological symptoms' found in the record." *Urbanek v. Saul*, 796 F. App'x 910, 914 (7th Cir. 2019) (quoting *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019)).

Claimant's RFC argument does little more than restate arguments about her subjective symptom complaints, which she argues are work preclusive. The Court is not persuaded by Claimant's argument. In essence, Claimant argues that her OCD and symptoms of zoning out cause her to work too slowly, and therefore, she is unable to work. The ALJ, however, was not convinced because Claimant had maintained previous employment at K-Mart and was able to take care of her daughter and tend to her daily activities. (R.127). The ALJ pointed out that Dr. Bunday characterized Claimant's functional difficulty with following through with multi-step instructions and encouraged her to seek employment that did not require a fast pace. (R.132, citing R.1547). Dr. Bunday acknowledged that Claimant likely would have difficulty with a job requiring a specific pace and jobs that required memorizing multiple steps, but that Claimant may be able to perform jobs that are "basic in nature and repetitive." (R.1553). Dr. Cheon similarly opined that Claimant would be capable of carrying out

19

short and simple instructions. (R.1557). In the Court's view, the ALJ reasonably concluded that an RFC that allowed for simple, routine, and repetitive tasks with no fast paced work sufficiently accommodated Claimant's limitation with multi-step tasks and would permit her to work at a slower pace.

Claimant may disagree with the ALJ's conclusion, but the "RFC is a legal—and not a medical—decision that is exclusively within the ALJ's authority to make[.]" *Michael B. v. Berryhill,* 2019 WL 2269962, at *6 (N.D. Ill. 2019). In this case, the ALJ found Claimant can perform light work "limited to simple, routine and repetitive tasks, in a work environment free of fast paved production requirements, involving only simple, work-related decisions, with few, if any, workplace changes; occasional supervision and occasional interaction with co-workers and the public." (R.127). In the Court's view, the ALJ supported her RFC assessment with substantial evidence, and remand is not required.

## CONCLUSION

For all the reasons discussed above, Claimant's Memorandum in Support of Reversing or Remanding Commissioner's Decision [ECF No. 17], which this Court construes as a motion, is denied, and the Commissioner's Motion for Summary Judgement [ECF No. 23] is granted.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: January 13, 2023